# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BRANDON J. ASHDOWN,

    **Plaintiff,**

                                  **Civil Action 2:17-cv-00495**
                                  **Judge James L. Graham**
    v.                                  **Chief Magistrate Judge Elizabeth P. Deavers**

TIM BUCHANAN, *et al.*,

    **Defendants.**

## REPORT AND RECOMMENDATION

       This matter is before the Court upon review of Interested Party – State of Ohio's Motion to Dismiss (ECF No. 48) which also serves as Interested Party State of Ohio's Discovery Status Report (*Id.*), Plaintiff's Motion for Default Judgment and Objection Response to Interested Party – Discovery Status Report and Motion to Dismiss for Failure to Exhaust Administrative Remedies (ECF No. 60) which is construed as Plaintiff's Response in Opposition to Interested Party State of Ohio's Motion, and Putative Defendants' and Interested Party the State of Ohio's Response to Plaintiff's Motion for Default Judgment and Reply to Plaintiff's Response to Motion to Dismiss (ECF No. 61) which serves as State of Ohio's Reply in Support of its Motion to Dismiss.

       Accordingly, the Court construes the Motion to Dismiss (ECF No. 48) as ripe, while the Motion for Default Judgment (ECF No. 60) is not yet ripe. Therefore, this Report and Recommendation makes a recommendation only as to the Motion to Dismiss. (ECF No. 48.)

For the following reasons, the Undersigned **RECOMMENDS** that State of Ohio's Motion to Dismiss be **GRANTED**.

## I. BACKGROUND

Plaintiff initiated this action on June 8, 2017, alleging deliberate medical indifference to his serious medical needs. (ECF Nos. 1, 4.) On August 7, 2017, Plaintiff filed an Amended Complaint. (ECF No. 7.) On September 27, 2018, Defendants filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) The Court granted Defendants' Motion to Dismiss on February 2, 2018, as to Defendants Tim Buchanan, Charles Bradley, and Vanessa Sawyer. (ECF No. 32.) The Court did not dismiss the case as to the unnamed Defendants "FMC Transport Staff" and "FMC Doctors and Staff." (*Id.*) On February 5, 2018, the Court granted Plaintiff sixty (60) days to engage in further discovery or to amend his Complaint in order to identify the unnamed Defendants. (ECF No. 33.) Interested Party, the State of Ohio, made a limited appearance pertaining to the unnamed Defendants. (ECF No. 36.)

On March 26, 2018, Plaintiff requested an extension of time to file an Amended Complaint. (ECF No. 35.) The Court granted Plaintiff's Motion and permitted him leave to file his Amended Complaint on or before June 8, 2018. (ECF No. 38.) On June 4, 2018, Plaintiff again requested an extension. (ECF No. 41.) The Court again granted Plaintiff's Motion and permitted him to file his Amended Complaint on or before July 28, 2018. (ECF No. 42.) On June 22, 2018, Plaintiff filed a Motion for an Order Compelling an Answer and Discovery Response. (ECF No. 43.) Plaintiff alleged that the State of Ohio had failed to respond to a letter he sent its counsel requesting assistance in naming the unnamed Defendants. (*Id.*) Plaintiff therefore moved for an order directing the State of Ohio to produce any and all documents

pertaining to the event in question. (*Id.*) The State of Ohio responded on July 6, 2018, opposing the Motion to compel discovery. (ECF No. 44.) On July 25, 2018, the Court granted Plaintiff's Motion, finding that the State of Ohio's attempts to partially meet Plaintiff's discovery request were woefully inadequate. (ECF No. 45.) The Court ordered the State of Ohio to fully comply with Plaintiff's discovery request by informing the Court by written notice on the docket of the results of its compliance within thirty (30) days of the date of the Order. (*Id.*) The State of Ohio responded to the Order on August 24, 2018 with the results of its compliance with the discovery request and a motion to dismiss for lack of jurisdiction (failure to exhaust). (ECF No. 48.) The State of Ohio asserts that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) ("PLRA" or "the Act") before filing the instant action. (*Id.*)

## II. STANDARD OF REVIEW

The PLRA was developed in part to address the large number of prisoner complaints filed in federal court. *Jones v. Bock*, 549 U.S. 199, 202 (2007).[1] The Act "mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Id.* (citing 42 U.S.C. § 1997e(a)). The exhaustion provision of the PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

---

[1] "Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts." *Jones*, 549 U.S. at 203 (citing *Woodford v. Ngo*, 548 U.S. 81, 94 n.4 (2006)).

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 n.1 (1991)). Furthermore, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 204 (citing *Porter*, 534 U.S. at 524). Indeed, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).[2]

The exhaustion requirement of the PLRA is strict, "not to be harsh on prisoners," but rather "to further the important goals behind the law [by allowing] prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 226 (6th Cir. 2011) (citing *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)). Indeed, the requirement of exhaustion "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

Furthermore, exhaustion under the PLRA "is required even if the prisoner subjectively believes the remedy is not available . . . , even when the state cannot grant the particular relief requested . . . , and even where [the prisoner] believe[s] the procedure to be ineffectual or futile[.]" *Napier*, 636 F.3d at 222 (citing *Brock v. Kenton County*, 93 F. App'x 793, 798 (6th Cir. 2004); *Booth*, 532 U.S. at 741; *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006)).

---

[2] "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Woodford*, 548 U.S. at 85; *see also Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003) ("When a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate.") (citing 42 U.S.C. § 1997e(a); *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)).

Additionally, exhaustion must occur before a prisoner files a complaint, and a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("[E]xhaustion [is] a precondition to filing an action in federal court . . . .") (citations omitted). What is necessary to comply with exhausting the administrative remedies is determined by the "prison's requirements, and not the PLRA[.]" *Jones*, 549 U.S. at 218. "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed–Bey*, 603 F.3d 324 (citing *Woodford*, 548 U.S. at 90).

Because Plaintiff was a prisoner of the state at the time he filed the instant action, he is subject to the PLRA's requirements. *See* 42 U.S.C. § 1997e(a); *see also Napier*, 636 F.3d at 222 (noting that the PLRA applies to an inmate "in any jail, prison, or other correctional facility").

### III. ANALYSIS

As discussed above, a prisoner only exhausts his administrative remedies by following the prison requirements. *Jones*, 549 U.S. at 218; *see also Reed–Bey*, 603 F.3d 324 (citing *Woodford*, 548 U.S. at 90). Ohio Department of Rehabilitation and Correction ("ODRC") Assistant Chief Inspector Karen Stanforth provided an Affidavit regarding the prison grievance procedure at Plaintiff's institution. (ECF No. 48, Ex. 2, "Stanforth Aff.".)[3] Assistant Chief Inspector Stanforth explained the following:

> ODRC maintains an inmate grievance procedure that is available to all inmates regardless of their disciplinary status at each of its institution [sic]. *See* Ohio

---

[3] Assistant Chief Inspector Stanforth averred in the affidavit that as part of her job duties she handles appeals from inmates as set out in Ohio Administrative Code 5120-9-31(K) and directs grievances to the Office of the Chief Inspector of ODRC as set out in Ohio Administrative Code 5120-9-31(M). (Stanforth Aff., at ¶ 2.) Furthermore, she represented that she is the custodian of the records of said appeals and grievances. (*Id.*)

5

> Admin. Code 5120-9-31(D). This procedure allows inmates to seek relief regarding any aspect of institutional life that directly and personally affects the grievant. This may include complaints regarding policies, procedures, conditions of confinement, or actions of institutional staff. *See* Ohio Admin. Code 5120-9-31(A).
>
> The inmate grievance procedure is comprised of three consecutive steps. Ohio Admin. Code 5120-9-31(K). Under step one of the procedure, the inmate submits an informal complaint to the direct supervisor of the staff member or the department most directly responsible over the subject matter concerning the inmate. *See* Ohio Admin. Code 5120-9-31(K)(1).
>
> If the inmate is not satisfied with the results, the inmate must proceed to step two by filing a formal grievance with the inspector of institutional services at the prison where he is confined. See [sic] Ohio Adm. [sic] Code 5120-9-31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance. *Id.*
>
> If the inmate is still dissatisfied, the inmate must proceed to the third step, which is an appeal to the Office of the Chief Inspector of ODRC. *See* Ohio Admin. Code 5120-9-31(K)(3). In circumstances where the inmate alleges misconduct on the part of the warden or inspector of institutional services at the prison where the inmate is confined, the inmate may initiate a grievance directly with the Office of the Chief Inspector. *See* Ohio Admin. Code 5120-9-31(M). There is no appeal from the Chief Inspector's decision in a direct grievance under Ohio Admin. Code 5120-9-31(M). An inmate does not exhaust his or her remedies under Ohio Admin. Code 5120-9-31 until the inmate has received a decision in an appeal to the Office of the Chief Inspector or has received a decision from the Office of the Chief Inspector as to a direct grievance alleging misconduct against the warden or inspector of institutional services.
>
> All inmates in the custody of ODRC are given both written and oral instructions on how to use the inmate grievance procedure including instructions on appeals to the Office of the Chief Inspector and direct grievance [sic] to that office as required by Ohio Admin. Code 5120-9-31(C).

(Stanforth Aff., at ¶¶ 6-10.) In Plaintiff's Amended Complaint, he stated that he took the steps of "Informal Complaint to the medical staff and then to the grievance committe [sic] in Columbus" in response to whether he had presented the facts relating to his complaint in the prisoner grievance procedure provided in his institution. (ECF No. 7, at p. 3.) He also made the following statement in his Statement of Claims: "[A] formal Grievance was prepared and submitted through proper channels in accordance with ODRC policies and procedures, and the

response from the office of the Institutional Inspection committee was that they do not have the authority to handle institutional problems." (*Id.*, at p. 8.)[4] These actions taken by Plaintiff, however, do not constitute fulfillment of the prison grievance procedure as outlined in the Stanforth Affidavit. Accordingly, Plaintiff has failed to exhaust his administrative remedies.

Assistant Chief Inspector Stanforth stated the following regarding Plaintiff's use of the grievance procedures:

> I have reviewed the grievance records regarding Inmate Brandon Ashdown (inmate number A705024). Inmate Ashdown filed five informal complaints . . . in 2015. He did not file any formal grievances nor did he file any appeals to the Chief Inspector's Office in 2015.
>
> . . .
>
> Inmate Ashdown did not pursue any of his institutional complaints in 2015 to the point of exhausting his administrative remedies.

(Stanforth Aff., at ¶¶ 4, 11.) The five informal complaints that Plaintiff filed in 2015, none of which he pursued to the point of exhausting his administrative remedies, do not concern the alleged claims in the instant action. (*See* ECF No. 48, Ex. 2, "Plt's Grievance Hist.".)

Specifically, on July 18, 2015, Plaintiff filed an informal complaint alleging that correctional officers took one of his possessions (a fan) and that they refused to give it back to him despite that it was "[titled] in [his] name." (*Id.*) In the "action taken" section, the staff member wrote that "[t]he inspector does not answer Informal Complaints. You already filed a similar complaint to the shift supervisor." (*Id.*) On July 21, 2015, Plaintiff filed an informal complaint alleging that his fan was again unfairly confiscated. (*Id.*) In the "action taken"

---

[4] Plaintiff attached a copy of a letter from the Correctional Institution Inspection Committee, dated June 6, 2016, to his initial Complaint. (ECF No. 4, at p. 10.) Within the letter, the writer notes they do not have decision-making authority, but notes that they can contact institutional staff on Plaintiff's behalf and also suggests actions Plaintiff may take regarding his claims. (*Id.*)

7

section, the staff member wrote that "[a]ccording to Sgt. McKee – your fan has been returned. If you alter it in any way, it can be taken as contraband." (*Id.*) On August 8, 2015, Plaintiff filed two informal complaints alleging that his mail regarding a legal appeal "sat around here at [Noble Correctional Institution] for a week before it was [mailed]." (*Id.*) In the "action taken" sections, the staff member wrote "see attached cash slip copy" and "[t]he cash slip for the postage was signed by you and Sgt McKee on 7/14/15, and processed on 7/15/15 and then mailed out. We have no control over the USPS and how fast they deliver mail." (*Id.*) On August 13, 2015, Plaintiff filed an informal complaint alleging that a correctional officer unfairly confiscated some of his personal possessions. (*Id.*) In the "action taken" section, the staff member wrote that "[Correctional Officer] Brunoni stated he did not take any medical soap, but did take the contraband ruler and homemade JP4 case, and wrote out a contraband slip. You received an appropriate conduct report. Part of the informal process is to send copies in a kite, so he was doing his job by reminding you to do it correctly. It is the [correctional officer's] discretion to turn fans on/off." (*Id.*) None of these informal complaints by Plaintiff remotely concern the incident of alleged deliberate medical indifference at issue in the instant action.

Regarding the Motion to Dismiss, in Plaintiff's Response in Opposition he simply argues that "the State failed to produce any adequate evidence to support such a claim." (ECF No. 60, at p. 3.) He also asserts that "one can only assume that the State must have misplaced, or destroyed it prior to filing its response when it '**inadvertently deleted**' the logs that this Court Order [sic] it to produce." (*Id.*) (emphasis in original). The Court understands Plaintiff to be suggesting that the State "misplaced" or "destroyed" evidence proving that Plaintiff exhausted his administrative remedies. This bare allegation, for which Plaintiff fails to provide any support, does not constitute evidence that Plaintiff properly exhausted his administrative

remedies. Indeed, Plaintiff has failed to proffer any evidence at all that would defeat the State of Ohio's Motion to Dismiss. Plaintiff refers to no documentary evidence that he complied with the exhaustion of administrative remedies prior to commencing the instant action. The State of Ohio, however, supports its Motion to Dismiss with the Stanforth Affidavit and Plaintiff's grievance history as documented in his institutional complaint summary[5] as previously described more fully.

Because Plaintiff has failed to exhaust his administrative remedies as required by the PLRA, the Court does not find it necessary to address whether the State of Ohio adequately complied with the Court's order to fully responded to Plaintiff's discovery request.

## IV. CONCLUSION

For the reasons stated above, the Undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA. Accordingly, the Undersigned **RECOMMENDS** that the State of Ohio's Motion to Dismiss (ECF No. 48) be **GRANTED**.[6]

It is **FURTHER RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

---

[5] The State of Ohio's attachments to it's Motion to Dismiss are labeled Exhibit 1 (Affidavit of Jill Glispie), Exhibit 2, (Affidavit of Assistant Chief Inspector Karen Stanforth, R.N.), and again Exhibit 2 (Plaintiff's Grievance History including Informal Complaint Resolutions from 2015), instead of properly being labeled as Exhibit 3.

[6] On January 25, 2019, the Court granted Plaintiff's Motion for Enlargement of Time regarding the deadline for him to file an Amended Complaint. (ECF Nos. 58 & 59.) Since the Court now recommends dismissal of the instant action, it will not at this time set a new deadline for Plaintiff to file an Amended Complaint.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 21, 2019  /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE